UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
BERNARD CORSO, RACHEL CORSO,
Individually and on behalf of their son, B.C., a
Minor and their daughter, L.C., a Minor,

                    Plaintiffs,          **MEMORANDUM AND ORDER**

      -against-                                     CV 19-3189 (GRB)

COUNTY OF SUFFOLK, SUFFOLK COUNTY
POLICE DEPARTMENT, DETECTIVE
CHRISTINE TAMARO (Shield #1088), DETECTIVE
"JOHN" NEE (the name "John" being fictitious, as the
true first name is currently unknown), in their individual
and in their official capacities, SUFFOLK COUNTY
DEPARTMENT OF SOCIAL SERVICES, SENIOR
CASEWORKER BARBARA HAYNES,
CASEWORKER KIMBERLY KENNEDY, in their
individual and in their official capacities, GOOD
SAMARITAN HOSPITAL MEDICAL CENTER,
JOANNA MARINO, DO, MICHAEL P. FELICETTA,
DO, TARA ACCOVALLO, RN, SOCIAL WORKER
ELENA KOZYANSKY and Police Officers JOHN
DOE 1 through JOHN DOE 10 (the name "John Doe"
being fictitious, as the true names are presently unknown),
in their individual and in their official capacities,

                    Defendants.
------------------------------------------------------------X
**GARY R. BROWN, United States District Judge**

      Plaintiffs Bernard and Rachel Corso, acting on their own behalf and purportedly on behalf of their infant children,[1] bring this action arising from an incident in which one of the minor plaintiffs – a literal infant – sustained blunt force trauma injury to her genitals while in her parents' care. The complaint, which is woefully deficient in actionable facts, fails to provide critical details available in

---

[1] Consistent with practice and law, the complaint lists the minor plaintiffs using only initials in an effort to protect their privacy interests, but in an inexplicable lapse in judgment, specifies their exact dates of birth without apparent purpose, which is hardly a best practice. Compl., Docket Entry ("DE") 1, ¶¶. 8-9.

1

documents referenced in the pleadings, including that the plaintiff Bernard Corso stipulated in Suffolk County Family Court to a finding of parental neglect in connection with the subject incident. Nevertheless, plaintiffs seek more than $5 million in purported damages from the actions of defendants, which include Suffolk County and its agencies, several police officers, nurses, and social workers (all of whom are sued in the individual and official capacities), as a result of their efforts to comply with their obligations and responsibilities under the law and protect the infant plaintiff under trying circumstances.

Defendants have each filed motions to dismiss. For the reasons set forth herein, those motions are granted.

**Facts Alleged in the Complaint**

The complaint purports to introduce this as a "civil rights action bought [sic] to vindicate the plaintiffs' rights under the Fourth, Fifth, Ninth,[2] and Fourteenth Amendments of the Constitution of the United States." Compl., DE 1 ¶ 1. Numerous defendants, both known and unknown, are identified and described as follows:

- Suffolk County,

- two of its agencies, the Suffolk County Police Department ("SCPD") and the Department of Social Services ("DSS"),[3]
- SCPD Detectives Tamaro and Nee,

- DSS senior caseworkers Barbara Haynes and Kimberly Kennedy,

- Good Samaritan Hospital Medical Center, "a not-for-profit medical center hospital

---

[2] As just one example of the legally specious nature of the complaint, all or virtually all claims are predicated in part on claimed violations of the plaintiffs' rights under the Ninth Amendment to the United States Constitution. However, "the Ninth Amendment [does not] provide 'an independent source of individual rights; rather, it provides a rule of construction that we apply in certain cases.'" *Barnett v. Carberry*, 420 F. App'x 67, 69 (2d Cir. 2011) (quoting *Jenkins v. C.I.R.*, 483 F.3d 90, 92 (2d Cir. 2007)).

[3] These entities are plainly not subject to suit. "[D]epartments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot be sued." *Johnson v. Syracuse Police Dep't*, No. 520CV1055GTSML, 2020 WL 8254417, at *5 (N.D.N.Y. Nov. 10, 2020), *report and recommendation adopted,* No. 520CV1055GTSML, 2021 WL 214374 (N.D.N.Y. Jan. 21, 2021) (quoting *Burris v. Nassau Cnty. District Attorney*, 14-CV-5540, 2017 WL 9485714, at *4 (E.D.N.Y. Jan. 12, 2017)); *Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002) (dismissing claims against Lynbrook Police Department); *Wilson v. City of New York*, 800 F. Supp. 1098, 1101 (E.D.N.Y. 1992) ("The court also dismisses the claims against the New York City Police Department, which cannot be sued independently because it is an agency of the City of New York.").

2

> serving the communities on the south shore of Long Island,"
>
> - Joanna Marino, DO, Michael Felicetta, DO, Tara Accovallo, RN, all described as providers of medical services,
>
> - Elana Kozyansky, a hospital social worker,
>
> - ten "John Doe" police officers.

All of the individual defendants, the complaint repeatedly states, are sued in their individual and official capacities. *Id.* ¶¶ 12-24. Strangely, as though a remnant from a personal injury suit, the complaint contends that the "Defendant COUNTY assumes the risks incidental to the maintenance of the Department of Social Services and the employment of caseworkers as said risks attach to the public consumers of the services provided by [DSS]." *Id.* ¶ 14. And, just as oddly, the complaint contends that "DET CAMARO [sic], DET NEE, HAYNES, KENENDY [sic] and the officer-defendants *were engaged in a joint venture*, assisting each other in performing the various actions described herein and lending their physical presence and support and authority of their offices to one another." *Id.* ¶ 27 (emphasis added).

As to the facts, the complaint reports that "[o]n September 24, 2016, the Minor Plaintiff, L.C. [who was then approximately 17 months old] sustained injuries to her person . . . [and] was bought [sic] to the HOSPITAL E.R. and evaluated and admitted for injuries sustained to her genital area." *Id.* ¶ 29-30. Dr. Marino and/or Accovallo, the nurse, notified the police and DSS of potential sexual abuse of L.C. *Id.* ¶ 31. The detectives responded to the hospital and initiated a criminal investigation of Bernard Corso "based on the false statements and reports of Defendants, KENNEDY, FELLICETTA [sic], MARINO, ACCOVALLO and KOZYANSKY." *Id.* ¶ 32. Except as set forth in the following paragraph, the complaint does not indicate the manner in which the "statements and reports" were "false."

Indeed, paragraph 33 of the complaint appears to contain the core allegation of the complaint, reproduced here in full:

3

> That Defendants MARINO, FELICETTA, ACCOVALLO and KOZYANSKY did conspire with Defendant DET NEE and DET TAMARO to report the cause of the injuries as "sexual' in nature and not "blunt force trauma" to initiate the removal of the children from the Plaintiff BERNARD CORSO.

*Id.* ¶ 33. The complaint then relates that Kennedy "advised" Bernard Corso "not to return to his home for the night" and "also required that DET NEE be allowed to search the Plaintiff's [sic] home that night." *Id.* ¶ 34-35. L.C.'s injuries were sufficiently severe that she was "admitted to the Hospital that night." *Id.* ¶36. Subsequently, Detectives Tamaro and Nee "conducted a search of Plaintiff's [sic] home which revealed no significant evidence." *Id.* ¶ 37.

On September 29, 2016, based on statements made by various defendants, caseworker Haynes petitioned the Suffolk County Family Court "on an emergency basis for an Order of Protection on behalf of the Minor Children against the Plaintiff BERNARD CORSO." *Id.* ¶ 38. According to the complaint, the petition alleged that:

> on September 25, 2016, at a time when the Petitioner was the sole caretaker of his son, B.C. and his daughter, L.C., Plaintiff BERNARD CORSO was unable to provide an "explanation consistent with said injuries."

*Id.* ¶ 39. As a result, "[f]ollowing . . . a Preliminary Hearing . . . Temporary 'Orders of Protection' were entered on or about December 12, 2016, barring the Respondent from communicating with his Children, EXCEPT through Facetime and Skype or having any unsupervised contact with his Children." *Id.* ¶ 40. As a result, Bernard Corso moved out of the family home. *Id.* ¶ 41. Approximately one month later, after what the complaint describes as "a long and lengthy Court proceeding," the Suffolk County Family Court issued "an 'Order of Fact-Finding and Deposition without Placement', dated January 18, 2017, which resulted in additional 'Orders of Protection' being issued on behalf of the Minor Children." *Id.* ¶ 42. Six months later, "the Plaintiff BERNARD CORSO moved to have the 'Orders of Protection' vacated, and same were vacated without opposition." *Id.* ¶ 43.

The complaint then purports to set forth nine causes of action against the defendants claiming

4

violations of constitutional and common law.

**Facts Drawn from Referenced Court Documents**

Notably absent from the allegations are significant facts readily discernable from the court documents referenced in the complaint. According to those documents, and as undisputed by the parties, Bernard and Rachel Corso are both police officers, a fact relevant to several assertions here. The Petition by defendant Haynes on September 29, 2016, contains the following factual addendum:

> Upon information and belief, on or about September 25, 2016, [L.C.] child alleged to be abused herein, was admitted to Good Samaritan Hospital. Said child was diagnosed as suffering from **blunt force trauma** to the vagina that resulted in injury around the base of the vagina, a hematoma, a tear at the posterior fourchette, and bruising on the labia majora. Medical staff at the hospital further explained that the child had bruising on both sides of the vagina which would not be consistent with her straddling something. The diaper the child bad been wearing was observed by the Suffolk County Police to contain a significant amount of blood. Respondent Bernard Corso was the sole caretaker for the child during the time the injuries were sustained by the child and has failed to provide an explanation consistent with said injuries sustained while the child was in the respondent's care.

DE 61-1 at 5 (emphasis added). Confirmation of much of this factual detail comes from statements made by the plaintiffs themselves. For example, on September 25, 2016, the day after the minor plaintiff L.C. was hospitalized, Rachel Corso executed a sworn statement in which she described, in graphic detail, that upon returning from work she removed blood stained clothing and saturated diaper from the baby to discover the "horrific" injury sustained by her infant daughter. DE 53-4 at 12-13. The statement indicates that prior to the discovery of that injury, L.C. had been in the exclusive care of her husband, Bernard Corso, who, when questioned by Rachel as to how this occurred, stated "I don't know." *Id.*

The filing of the petition led to the issuance of two Temporary Orders of Protection on December 12, 2016, one as to L.C., which is styled as arising in an "Abuse Proceeding," the second as to B.C., arising from a "Neglect Proceeding." *Id.* at 38-41. Notwithstanding the different categorization of the proceedings, the relief provided was identical: Bernard Corso was ordered to stay away from the children for one year pending further proceedings. *Id.* But within one month, on

5

January 18, 2017, Bernard Corso, then represented by counsel, signed a statement "mak[ing] an admission to child neglect" in connection with these incidents. *Id.* at 67. The Suffolk County Family Court then issued its "Order of Fact Finding and Disposition without Placement," in which it specifically accepted the admission, found that "the child suffered a serious injury for which there is no reasonable explanation," made a finding by a preponderance of the evidence that Bernard Corso had engaged in child neglect and ordered various relief to further safeguard the children, including various forms of supervision. *Id.* at 42-48.

Meanwhile, the Family Court ordered a "Forensic Parenting Evaluation" of Bernard Corso. *Id.* at 47. As stated by plaintiffs' counsel in an application to the Family Court, "in her written report dated January 26, 2017, Dr. Burkhard [of Child and Family Psychological Services, P.C.] found that there was 'no psychological reason to suspect that the injuries to [L.C.] occurred as a result of physical abuse by her father' and that 'Mr. Corso exhibits normal emotional and behavioral stability and has better than average parenting skills'."[4] *Id.* at 27. Based on that evaluation, Bernard Corso moved for modification of the Family Court's orders. *Id.* The file contains a handwritten modification order by the Family Court dated August 10, 2017 – approximately six months later. *Id.* at 21. That order provides only "that all restrictions on visitation between the respondent [Bernard Corso] and the children are vacated." *Id.* However, a second typed order of the same date states that "all orders of protection issued under this docket number are hereby vacated." *Id.* at 18.

## DISCUSSION

The pending motions to dismiss are decided under the well-established standard of review of motions made under Rule 12(b)(6), as discussed by way of example in *Burris v. Nassau County*

---

[4] Even this evaluation, which ultimately recommended returning Bernard Corso to the home, made the following observations: "Mr. Corso had been the caretaker for the children while Mrs. Corso was out. The parents were unable to provide an explanation for the child's injuries." DE 53-4 at 51.

6

*District Attorney*, No. 14-CV-5540 (JFB) (GRB), 2017 WL 9485714, at *3-4 (E.D.N.Y. Jan. 12, 2017), *report and recommendation adopted*, 2017 WL 1187709 (E.D.N.Y. Mar. 29, 2017), which discussion is incorporated by reference herein.  Under that standard, the Court is required to assume the allegations of the amended complaint to be true for the purposes of the motion.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v Twombly*, 550 U.S. 544, 570 (2007)).  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted).

The teaching of *Iqbal* cautions against the acceptance of "threadbare recitals" and "conclusory statements."   Here, the complaint constitutes a patchwork quilt fashioned from such recitals and conclusions.  Many of these allegations are not entitled to the assumption of truth, such as the unsupported assertions that defendants "maliciously initiat[ed] and prosecut[ed] a neglect proceeding," "conspir[ed] . . . [to] deprive [plaintiffs] of the equal protections of the laws," or "[sought] the removal and separation of the children from [Bernard Corso] without due process." *See, e.g.* Compl, DE 1 ¶¶ 46, 49, 55, 57 and 64; *compare with Iqbal*, 556 U.S. at 680 (rejecting unsupported allegations that defendants "'knew of, condoned, and willfully and maliciously agreed to subject [plaintiff]' to harsh conditions of confinement . . . .").  Thus, these unsupported recitations of legal theory cannot withstand the present motions.

Setting aside these conclusory assertions, the few non-conclusory allegations that remain – even accepted as true – prove implausible to support claims for relief, particularly when viewed in the context of the documents of which this Court takes judicial notice: the very court applications, documents and orders complained of by plaintiffs.[5]  The critical allegation of the complaint, as set

---

[5] A number of these documents have been filed by the parties on this motion and are undisputed as to authenticity, relevance and content; in fact, all records of the New York State Office of Children and Family Services regarding plaintiffs were obtained in anticipation of this motion on consent of the parties and by order of this Court.  *See* DE 34.

7

forth above, is the allegation of a conspiracy among the defendants "to report the cause of the injuries as 'sexual' in nature and not 'blunt force trauma' to initiate the removal of the children from the Plaintiff BERNARD CORSO." Compl, DE 1 ¶ 33. Counsel for plaintiff considers this assertion so critical to the defense of the instant motion that the allegation is invoked repeatedly in plaintiffs' filings. *See, e.g.*, Plaintiffs' Memorandum in Opposition, DE 52-7 at 2, 8; DE 54-6 at 1, 8; DE 58 at 2, 8; DE 62-2 at 2, 8. On the surface, the implications of the distinction between an infant sustaining a blunt force trauma injury to the genitals and a characterization of such injury as sexual in nature is not immediately apparent. However, any injury to plaintiffs that could be inferred from this allegation is entirely undermined by the face of the Family Court Petition described in the complaint, which actually states that the "child was diagnosed as suffering from blunt force trauma to the vagina," and does not describe the injury as "sexual" in nature. DE 61-1 at 5. And while the Petition as to L.C. was classified as an "abuse" petition, the "neglect" petition filed as to B.C. resulted in exactly the same relief, further evaporating this distinction. DE 53-4 at 38-41. And, of course,

---

As to considering such documents on a Rule 12 motion, the Second Circuit has held:

> In *Cortec*, we explored the question of what documents a district court may consider when disposing of a Rule 12(b)(6) motion. We stated that, generally, the harm to the plaintiff when a court considers material extraneous to a complaint is the lack of notice that the material may be considered. *Cortec*, 949 F.2d at 48. Accordingly, "[w]here plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated." *Id.* In the context of claims arising from an unprofitable corporate acquisition, we found that the district court properly considered certain documents related to the purchase of shares, because they were "documents plaintiffs had either in [their] possession or had knowledge of and upon which they relied in bringing suit." *Id.* We considered this standard again in *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir.1993), where we stated in dicta that, on a motion to dismiss, a court may consider "documents attached to the complaint as an exhibit or incorporated in it by reference, ... matters of which judicial notice may be taken, or ... documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." Because this standard has been misinterpreted on occasion, we reiterate here that a plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion . . . The contracts considered by the District Court in this case comfortably meet this test because they are integral to the Amended Complaint.

*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). Not only are these prerequisites met here, the Court also provided the parties notice under Fed. R. Civ. P. 12(d) that the motions to dismiss might be treated as applications for summary judgment. Electronic Order dated 3/23/2020. However, as indicated above, the Court finds it appropriate to take judicial notice of the documents addressed here and so addresses these motions under Rule 12.

plaintiff Bernard Corso admitted to a finding of neglect after being cautioned of the potential consequences of such an admission, and with the benefit of the advice of counsel. *Id.* at 67.

Beyond that single allegation, there are few allegations that can even be deemed facts. In an effort to draw all inferences in favor of the non-movant, the Court has considered the implications of the complaint concerning the detectives' directions to the plaintiffs concerning Bernard Corso's return to the home on the evening of the injury, as well as the suggestion that the detectives insisted on a search of the residence, presumably without a warrant. Compl., DE 1 ¶¶ 34-37. While these indirect contentions would not be cognizable in this action given the theories pled, the fact that both adult plaintiffs are police officers would, in any event, largely undermine the significance of such suggestions. Furthermore, the assertion that the defendants lacked probable cause to institute the subject Family Court proceedings is entirely undercut by the facts and circumstances contained in the Court record, including the statements and admissions of the adult plaintiffs, the information contained in court applications and the well-supported and documented findings by the Family Court.

Upon careful consideration, then, the defendants' motions to dismiss pursuant to Rule 12 must be granted in all respects. On this motion, the defendants appropriately raise a phalanx of additional arguments in favor of dismissal, including absolute immunity;[6] qualified immunity;[7] the immunity enjoyed by mandated reporters under state law; the failure of the plaintiffs to allege adequate facts to support *Monell* liability; issue preclusion and the *Rooker-Feldman* doctrine;[8] the improper characterization of the Hospital, its employees and independent contractors as state actors under §1983; and the existence of probable cause, which would defeat claims of malicious

---

[6] *V.S. v. Muhammad*, 595 F.3d 426, 432 (2d Cir. 2010) (caseworkers enjoy absolute immunity against claims of malicious prosecution for initiating Family Court proceedings).
[7] As the Second Circuit has reiterated, qualified immunity "protects federal and state officials from money damages and 'unnecessary and burdensome discovery or trial proceedings.'" *Coollick v. Hughes*, 699 F.3d 211, 219 (2d Cir. 2012) (quoting *Crawford–El v. Britton*, 523 U.S. 574, 598 (1998)).
[8] The Second Circuit has found that child neglect proceedings can bar subsequent litigation of constitutional issues. *Phifer v. City of New York*, 289 F.3d 49, 60 (2d Cir. 2002).

While the Court will not burden the record further or prolong these proceedings with a detailed examination of these principles, the Court's review suggests that these defenses have merit and will serve as alternative grounds in support of this Court's determination.

**Leave to Replead**

After making a dispirited effort to defend the current complaint, counsel for plaintiffs seeks leave to replead in the event that the Court dismisses the complaint. As Judge Pauley held:

> Leave to amend a pleading shall be "freely give[n] ... when justice so requires," Fed. R. Civ. P. 15(a), and should not be denied unless: (1) the movant acts in bad faith, (2) the amendment sought will be futile, (3) the motion is filed after undue delay, or (4) granting leave to amend would prejudice the adverse party, *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). The decision to grant or deny is within the discretion of the district court. *Foman*, 371 U.S. at 182; *United States v. Cont'l Ill. Nat'l Bank & Tr. Co. of Chi.*, 889 F.2d 1248, 1254 (2d Cir. 1989).

*Ambac Assurance Corp. v. U.S. Bank Nat'l Ass'n*, No. 17-CV-2614, 2020 WL 42245, at *1 (S.D.N.Y. Jan. 3, 2020); *accord Davidson v. Cty. of Nassau*, 2020 WL 956887, at *4 (E.D.N.Y. Feb. 26, 2020). The "'permissive standard' of Rule 15 'is consistent with [the Second Circuit's] strong preference for resolving disputes on the merits.'" *Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (quoting *Williams v. Citigroup Inc.,* 659 F.3d 208, 212–13 (2d Cir.2011)). "When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." *Davidson,* 2020 WL 956887, at *4 (quoting *Eliya, Inc. v. Kohl's Corp.*, 2016 WL 929266, at *8 (E.D.N.Y. Feb. 22, 2016), *report and recommendation adopted*, 2016 WL 929321 (E.D.N.Y. Mar. 9, 2016)).

Notwithstanding these important principles, in this matter, the Court finds that granting leave

---

[9] "[N]umerous courts have recognized that probable cause defeats a claim for abuse of process by demonstrating that a defendant acted with 'excuse or justification.'" *Cruz v. Reiner*, No. 11-CV-2131, 2011 WL 6204101, at *2 (E.D.N.Y. 2011) (citing *Abreu v. Romero*, No. 08-CV-10129, 2010 U.S. Dist. LEXIS 120188, at *25 (S.D.N.Y. 2010); *Pierre v. City of New York,* No. 05-CV-5018, 2007 U.S. Dist. LEXIS 60707, at *40-41 (E.D.N.Y. 2007)). "In order to establish [a malicious prosecution] claim under § 1983, 'a plaintiff must show that the defendant maliciously commenced or continued against the plaintiff a criminal proceeding that ended in the plaintiff's favor, and that there was no probable cause for the proceeding.'" *Green v. Montgomery*, 219 F.3d 52, 59 (2d Cir. 2000) (quoting *Marshall v. Sullivan*, 105 F.3d 47, 50 (2d Cir. 1996)).

to replead would be highly inappropriate. Three of the four factors listed above weigh against granting the motion. First, given the serious, yet factually unsupported allegations, there is a substantial question as to whether this action is brought vexatiously. Second, in light of the clear facts set forth in the Family Court record and related documents, repleading seems, by all accounts, futile, and plaintiffs' counsel – even at this late date – does not proffer any proposed allegations that would change this outcome. *See* Plaintiffs' Memorandum in Opposition, DE 52-7 at 17-18. Third, as discussed further below, given that this action charges defendants with a malicious conspiracy aimed at violating plaintiffs' familial rights, allowing this matter to continue would result in further prejudice to the defendants, particularly the individual defendants.

This last concern implicates a notion contained in the text of the rule: Rule 15 places this decision clearly within the discretion of the court, to be exercised "when justice so requires." Fed. R. Civ. P. 15(a)(2). It is the considered judgment of this Court that allowing this matter to continue would constitute a fundamental injustice. While the Court recognizes that the matters complained of are sensitive and painful for the plaintiffs, the filing of the instant suit appears entirely unjustified. Worse still, the wholesale inclusion of the doctors, nurses, police officers, social workers and caseworkers charged with navigating these difficult and dangerous situations as defendants in a suit, charging them with malice and conspiracy based upon a complete absence of factual allegations, is simply intolerable.

Two opinions in *Southerland v. City of New York*, 681 F.3d 122 (2d Cir. 2012), which were joined by five Circuit judges, are instructive in this regard. In *Southerland*, the plaintiff sued a caseworker who removed children from a home where they were subject to abuse, claiming that the caseworker lacked probable cause for his actions. *Id.* at 123. In one dissenting opinion, Judge Raggi, joined by four other Circuit judges, argued forcefully that "the scope and parameter of the constitutional rights at issue in the context of state adjudications of parental abuse raise questions of exceptional importance warranting *en banc* review." *Id.* at 125. Judge Raggi observed:

11

>For the same reasons that the law does not permit a convicted defendant to challenge the sufficiency of the evidence supporting his arrest, *see Cameron v. Fogarty*, 806 F.2d 380, 388–89 (2d Cir. 1986), it should not permit an adjudicatedabusive parent . . . to sue a rescuing caseworker on a theory that the caseworker prematurely intervened. Recognizing a viable claim for money damages in such circumstances risks bringing the law into disrepute. Further, it endangers future abuse victims by unnecessarily deterring caseworkers from promptly intervening for fear of being liable in money damages, not only in cases where no parental abuse or neglect is established but also in cases where courts conclusively determine that it is.

*Id*. at 124-25. In a separate dissenting opinion, then-Chief Judge Jacobs, also joined by four other Circuit judges, writes that 1983 jurisprudence is increasingly premised on the

>tacit assumption that [the caseworker] Mr. Woo is merely a nominal defendant,that the City of New York will take on his defense and indemnify him for any judgment, and that litigation like this is not really a claim against the individualbut is in effect an instrument for developing ever more ramified constitutional principles and for policing governmental compliance with these constitutional developments.
>
>An individual defendant has at stake his savings, his pension, the equity in his home, the kids' college fund: This should tell us something about the threshold of liability.

*Id.* at 137-38. Judge Jacobs identifies several flaws in these assumptions, particularly in jurisdictions in which indemnification is not a foregone conclusion, and concludes that such cases produce "a substantial and direct impact on public safety . . . [and] create[] an incentive for child welfare workers (and other government employees charged with protecting the public) not to act." *Id.* In addition, this Court has considered that "the disruption, inconvenience and scrutiny that accompany civil litigation can have serious impact on individual defendants, including in such matters as career advancement, applying for a new position or obtaining loans." *Anaba v. Cty. of Suffolk*, 2014 WL 1411770, at *12 (E.D.N.Y. Apr. 11, 2014). These considerations apply with equal force to the instant case, in which the defendants appear to have acted responsibly to address serious allegations in a very difficult situation.

>In conclusion, to quote the former Chief Judge:
>
>We should appreciate that conscientious child welfare workers must promptly make anguished decisions. As judges, we can weigh the legal issues presented anddraft at leisure, assisted by a journal of law clerks. Mr. Woo had none of these advantages; and he acted as (one hopes) any dutiful child welfare worker in his position would

> have done. Not only was Mr. Woo not so "plainly incompetent" asto forfeit the protections of qualified immunity, *al–Kidd*, 131 S. Ct. at 2085 (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L.Ed.2d 271 (1986)), his judgment that Southerland was abusing or neglecting his children was spot on, and was vindicated by the Family Court's findings of sexual and physical abuse.
>
> The panel would send Mr. Woo to a jury for an assessment of his liability and the damages he should pay. I would shake his hand.

*Southerland*, 681 F.3d at 138-39 (Jacobs, C.J., dissenting). It would appear that much the same thing could be said of the first responders and medical professionals in the instant case.

Thus, finding that granting leave to replead this matter would not serve the requirements of justice, such leave is denied.

## CONCLUSION

Based on the foregoing, this action is dsmissed with prejudice, and leave to replead is denied. The Clerk of the Court is respectfully directed to close the case.

**SO ORDERED.**

Dated: Central Islip, New York
      March 16, 2021

                                              /s/ Gary R. Brown
                                              GARY R. BROWN
                                              United States District Judge